## JAMES GEORGE vs. GEORGE P. COX.

A deed of a lot of land " together with a right of a free passage-way from " the road, con-
veys a right to pass from the land to the road as well as from the road to the land ; and
this right of way, being appurtenant to the land, passes without specific mention by a
subsequent conveyance of the land ; and if the grantee, at the time of the grant, with
the acquiescence of the grantor locates the way of a given width, both thereby intending
to determine its width, the grant becomes a grant of a way of that width ; but if its
width is not determined by the parties, it remains a right of way of a width convenient
for the ordinary uses of free passage.

TORT for obstructing a way. Writ dated Feb. 23, 1872. The
declaration alleged that the plaintiff owned a lot of land, (describ-
ing it,) " and there was a way leading to the same from Pleasant .
Street, so called, in said Malden, which the plaintiff had the right
to use as a footway and carriage-way ; and the defendant erected
a fence in and across said way, and placed stones and posts in the
same, so that the plaintiff could not use the same." In the
answer the defendant alleged that " if he erected a fence or
placed stones or posts on any lands, (which he does not admit,)
he erected and placed the same upon the lands of the trustees of
the Centre Methodist Episcopal Society in said Malden, by order
of, and as a member of, the board of said trustees of said society,
in the erection of a suitable and proper fence for the protection of
their meeting-house and upon lands in, upon or over which the
plaintiff never had nor now has, any right or interest whatever
as a passage-way or otherwise."

At the trial in the Superior Court, before *Brigham*, C. J., it
was conceded that November 9, 1843, Samuel Cox and others
were the owners of a lot of land (shown upon the plan on the
next page) bounded : " Beginning at a stake on the county road
leading from Malden to Medford; thence running northerly by
land of Charles Lewis to land of the heirs of William Barrett, de-
ceased; thence running easterly by land of said heirs one hundred
feet to land of Dwight Fisher ; thence running southerly on land
of said Fisher to the road aforementioned; thence running westerly
by said road seventy-nine feet to the bound first mentioned."
This lot included both what is now the plaintiff's lot and the

George *v.* Cox.

land now owned by the trustees of the Centre Methodist Episco-
pal Society. November 9, 1843, Cox and others executed and
delivered to one George H. Fall a deed conveying in fee " a parcel
of land situate in the centre of said Malden and lying north of the
new Methodist Meeting-house, bounded as follows, viz. : Westerly

on land of Charles Lewis, northerly on land of the heirs of Wm.
Barrett, deceased, easterly on land of Dwight Fisher, and south-
erly on land of us, the grantors ; said piece of land is about one
hundred and forty-seven feet deep and about one hundred feet
wide, meaning hereby to convey all that portion of the lot of land
which was deeded to us by Samuel A. Cox, which lieth north of
the fence as it now stands, which has been erected by said George
H. Fall, together with a right of a free passage-way from Med-
ford road by the easterly side of the meeting-house to said lot of
land.   Also a right to pass to and from said land on the westerly
side of said meeting-house on such land as may be owned by us,
the grantors herein named."

It was further conceded that September 23, 1844, Fall executed
and delivered to the plaintiff a deed of the same premises, which
contained no mention of the way, except that reference was made
to the deed to Fall " for a more particular description of the
premises."   It was also conceded that Samuel Cox and others,
on March 9, 1853, executed and delivered to the trustees of the
Centre Methodist Episcopal Society in Malden a deed of the re-
mainder of the lot.

The plaintiff introduced evidence to show that before the exe-
cution of the deed by Samuel Cox and others to Fall, Cox and
others caused a post and picket fence to be erected on the line
between their other land and that subsequently conveyed to Fall ;
that this fence extended from their westerly line to within 18 feet
of their easterly line, and no farther; that subsequently, in the year
1855 or 1856, Cox and others caused horse sheds to be erected,
extending on the west side of the lot to within ten feet of the
west line, and on the east side to within eighteen feet of the east
line, so as to leave a way eighteen feet wide ; that after the land
was conveyed to the trustees of the Centre Methodist Episcopal
Society, and before 1860, the trustees erected a high, close, post
and board fence, east of their church, in a line with the east end
of the horse sheds, and the east post of the cross fence, and 18
feet distant from their east line, and extended it from the horse
sheds as far south as the southeast corner of the meeting-house,   ·
and about five feet distant from it, and that from this corner a

George *v.* Cox.

stone abutment extended to the southerly end of the fence so as to leave the way 18 feet wide at that point, and that afterwards, in the year 1860, the trustees continued the fence with stone posts and pickets, from the abutment on the east side of the meeting-house to Pleasant Street, their south line, in a direct line with the post and board fence, and the sheds; and that soon afterward, the way was graded and made passable and convenient for the travel of persons on foot and for horses and vehicles, to the width of 18 feet.

The plaintiff also introduced evidence tending to show that the space 18 feet wide east of the meeting-house was wholly used from 1842, as a passage-way, not only by the people that worshipped there, but by him and by any and all persons that had occasion to come to his house for any and all purposes, till November, 1871, when the defendant caused the fence east of the meeting-house to be removed toward the east line of the meeting-house lot about eight feet, leaving a passage-way of only about nine feet and nine inches wide, east of the meeting-house, and that the way as so encroached upon was not reasonably fit for use as a passage-way.

The defendant introduced evidence to show that he, at the time he removed the fence, was one of the trustees of the society, and that by vote of the trustees he was appointed a committee for removing, and was directed to remove the fence, and that all he did was done under the authority and by direction of the trustees, and that he did not remove the fence any nearer the fence on the east line than ten feet, and that all the travel through the passage-way before the removal of the fence was, and always since 1842 had been, where it went after the fence was so removed; and also offered evidence to show that the passage-way of ten feet was and always had been of sufficient width for all purposes of a passage-way to the plaintiff's premises. The defendant contended and argued to the jury, as tending to explain the location of the fences and horse sheds, that in 1842, when the fence east of the meeting-house was built, it was not to indicate the width of the passage-way, but was for the purpose of corresponding with the fence west of the meeting-house, which was on

the westerly line, and to be in symmetry with it, and the same distance from the church as the fence on the east side.

The defendant requested the court to instruct the jury :

" 1. That the evidence did not show any right in the plaintiff to pass over the land of the said trustees of the Centre Methodist Episcopal Society easterly of their meeting-house, except what he acquired as grantee under the deed from George H. Fall to him.

" 2. That the deed from George H. Fall to the plaintiff did not convey any right to pass over the land east of the said meeting-house.

" 3. That the deed from Samuel Cox and others to George H. Fall only conveyed to Fall the right to pass from Pleasant Street to the land therein conveyed over the land east of the meeting-house, and not the right to pass to and from the land to Pleasant Street over the land east of the meeting-house ; and that if the plaintiff acquired any right under this deed to pass over the land east of the meeting-house, it was only the right to pass from Pleasant Street to the land, and not the right to pass and repass."

The court gave the first instruction and declined to give the others, but instructed the jury among other things as follows :

" If the jury found the facts to be that Fall, in 1843, fixed the boundary of the court by the erection of his cross fence, and that in 1855 or 1856 the trustees of the Methodist Episcopal Society confirmed this width and limit by erecting the horse sheds, and afterward, upon the same line, between 1856 and 1860, erected and maintained a fence until November 16, 1871, and that Haven and others and their grantees acquiesced in this width of 18 feet, and that the same with their knowledge and without their opposition or objection has been entered upon and practically used by Fall and his grantees throughout the width of 18 feet, since 1843, these facts would operate to assign the right of way under the grant to Fall, and in legal effect would establish and define the way as if it had been described in the grant to Fall, as a way 18 feet in width. In the absence of these facts, establishing the width of the way granted to Fall, the legal effect of the grant was to give Fall and his grantee free passage to and from his land over a way of convenient width for all the ordinary uses of

free passage.   The plaintiff, to recover, must prove by the pre-
ponderance of evidence that the defendant's acts injured him in
his right of passage, either by depriving him of a free passage
over a way established in the manner indicated, with a width of
18 feet, or by depriving him of a free passage over a way which
was of convenient width for the ordinary uses of free passage to
and from his land, and then whether the way left to plaintiff by
defendant's acts, ten feet in width, or of such width as the evi-
dence proved, was of such convenient width, was a question for
the jury, upon all the evidence."

The verdict was for the plaintiff, and the defendant alleged
exceptions.

*I. W. & I. N. Richardson*, for the defendant.

*T. H. Sweetser & W. S. Gardner*, for the plaintiff.

MORTON, J.   The deed from Samuel Cox and others to George
H. Fall, dated November 29, 1843, conveys a piece of land in
Malden, lying north of the new Methodist meeting-house, " to-
gether with a right of a free passage-way from Medford road by
the easterly side of the meeting-house to said lot of land."   A
right of a passage-way is a right to pass to and from the road, and
the court properly refused to rule, as requested by the defendant,
that this deed conveyed to Fall only the right to pass from the
road to the land conveyed, and not the right to pass to and from
said land.   It is clear that the right of way was appurtenant to
the lot of land granted by the deed.   Its only apparent purpose
was to furnish access to and egress from such lot, and there is
nothing to lead to the inference that the parties intended it for
any other use.   *Dennis* v. *Wilson*, 107 Mass. 591, and cases cited.

As the deed to Fall annexed this way to the lot of land as an
appurtenance, it follows that it passed by the deed from Fall to
the plaintiff, as a part of the premises, though it was not specifi-
cally mentioned in the deed.   *Leonard* v. *Leonard*, 7 Allen, 277.
*Underwood* v. *Carney*, 1 Cush. 285.

The deed does not fix or define the width of the way granted.
But if the grantee, at the time of the grant, practically located
the way of a width of eighteen feet, and the grantors then and
for a long time subsequent acquiesced in this location, the par-

ties intending to fix the width, this would operate as an assignment of the way, would show what the parties intended by the deed, and would have the same legal effect as if this width had been fixed by the deed. *Bannon* v. *Angier*, 2 Allen, 128.

The instructions of the presiding judge to this effect were correct.

It was a question of fact for the jury whether the width of the way had been thus established. If they should find that it had not been established, then the instruction that the grant to Fall gave him a way of convenient width for all the ordinary uses of free passage to and from his land, was appropriate and correct. And the question, in this alternative, what was a suitable width, was properly left to the jury upon all the evidence. *Johnson* v. *Kinnicutt*, 2 Cush. 153. The instructions at the trial appear to have been correct. *Exceptions overruled.*