DOMINICO PEDUZZI ET UX. *v.* FRANCESCO RESTULLI ET UX.

May Term, 1906.

Present: TYLER, MUNSON, WATSON, POWERS, and MILES, JJ.

Opinion filed November 26, 1906.

*Deeds—Covenants—Construction—Right of Way—Indefinite
Description Completed by Parol When Deed Delivered—
Effect.*

Where the houses on two contiguous lots owned by the same persons
are so located that the jet of one overlaps that of the other, the pro-
vision in a deed by which they convey one of the lots: "The jet on
the northerly end of our said house and the jet on the southerly
end of the house on the land hereby conveyed are to remain as
they now are, with the privilege of all necessary repairing," does
not limit either party's right to build on his own land, but only
precludes either party from successfully claiming that the other's
jet wrongfully overhangs his land.

Where a deed conveying one of two contiguous lots owned by the
grantors, also conveys, "A right of way at least ten feet in width
from the house on the land hereby conveyed across our land
southerly to the street, the same to be used in common with us,
our heirs and assigns," and when the deed was delivered one of
the grantors pointed out to the grantees the right of way referred
to as being along a certain route, and that route afforded reason-
ably convenient access to the granted premises, it must be taken
that the grantees accepted with their deed the right of way as so
specified.

APPEAL IN CHANCERY. Heard on pleadings and mas-
ter's report at the March Term, 1905, Washington County,
*Rowell,* Chancellor. Bill dismissed. The orators appealed.

*Edward H. Deavitt* for the orators.

*John W. Gordon* for the defendants.

The fact that the grantor pointed out the right of way to the grantee at the time the deed was delivered fixed the location thereof. *Kinney* v. *Hooker,* 65 Vt. 333.

Powers, J.   The parties own adjoining lots on the north side of Short street in the city of Barre,—the orators' being situated in the rear of the defendants'.   Both lots were derived from common grantors, the orators' deed being dated in October, 1900, and the defendants' in April, 1902.   The houses on the respective lots are so located with reference to each other that the north end of the ell of the defendants' house joins the south end of the orators' house, and the jet of one overlaps that of the other.   Contained in the deed from the common grantors to the orators is this provision: "The jet on the northerly end of the ell of our (grantors') said house, and the jet on the southerly end of the house on the land hereby conveyed are both to remain as they now are with the privilege of all necessary repairing."   Soon after the orators bought their place, they removed a woodshed on the east side of it, and built an addition extending it easterly some fourteen feet. Afterwards and before the defendants took their title the common grantors built an addition to their house extending the ell mentioned easterly about seventeen feet and considerably beyond the east side of the orators' said addition.   Then the said common grantors built a piazza on the north end of this addition extending from its northeast corner westerly nearly to the east side of the addition to the orators' building. This was the situation of the buildings when the defendants bought their place.

The orators do not complain of the addition to the defendants' house,—and indeed they could not, for it is expressly found that they consented to its construction—but they insist

that the erection and maintenance of the piazza is a violation of the provision in the deed above recited.   We do not take this view of it, however.   Reading this provision in the light of the situation of the property at the time the deed was executed, and all the circumstances surrounding the transaction, we do not think the provision was inserted as a restraint on either party's right to build at pleasure on his own land, but rather to guard against the hazard of either party's claiming that the other's jet was on or overhung his land.   It seems pretty clear that this is as the parties understood it, else the orators would not have extended their building to the east, and would have at least protested when the piazza was in process of construction.   This they did not do, as the master finds that they neither assented nor objected when it was proposed to build the veranda, but allowed it to be constructed as it was.   They are hardly in a position to complain now, even if the structure violated the provision referred to,—which we think it does not.

The deed to the orators conveyed a right of way in the following terms: "We also convey to the said Peduzzi and his heirs and assigns a right of way at least of ten feet in width from the house on the land hereby conveyed, across our land southerly to the street, the same to be used in common with us, our heirs and assigns."

The only question made under this grant is as to the location of the right of way granted.   The question of the extent of the way is raised in the orators' brief, but the bill sets it up as ten feet in width and the court of chancery was not asked to define its limits, so that question is not before us.   The defendants claim that it runs along the west side of their lot, and they have built their fences accordingly.   The orators claim that it runs a few feet further east.

The master finds that at the time the orators took their deed, one of the grantors pointed out to them the right of way as located along the fence on the west side of the lot, and that the location so pointed out afforded reasonably convenient access to the orators' premises.   In these circumstances it must be held that the orators accepted the way in the location specified with their deed.

*Affirmed and remanded.*